IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| United States of America, | Case No. 3:07 CR 569 |
| | 3:11 CV 820 |
| Respondent-Plaintiff, | |
| | MEMORANDUM OPINION AND |
| -vs- | <u>ORDER DENYING PETITION</u> |
| Marvin Miller, | JUDGE JACK ZOUHARY |
| Petitioner-Defendant. | |

**INTRODUCTION**

This case is back before this Court, as directed by the Sixth Circuit, to provide Miller the opportunity "to develop a record regarding his counsel's alleged ineffectiveness during the plea negotiations" (Doc. 118 at 21). This Court held a record hearing during which Miller and his trial counsel, Deborah Rump, both testified. This Court also received post-hearing briefs (Docs. 129–30).

The Sixth Circuit remanded to this Court for a determination of the circumstances surrounding Miller's plea agreement (Doc. 118 at 19):

> Here, it appears that the prosecutor did offer a plea agreement that was lower than the ACCA's 180 month minimum, but there is no explanation as to the basis for the lower offer. Because we do not know the circumstances surrounding the plea offer, and because counsel have not addressed it in their supplemental papers, an evidentiary hearing is necessary.

The short answer to the Circuit's question as to why the proposed plea agreement had a lower sentencing range than the statutory minimum is, simply put, that the plea agreement did not contemplate that Miller was subject to the statutory mandatory minimum. The plea agreement did **not** contemplate allowing Miller to escape the Armed Career Criminal Act's ("ACCA") mandatory enhancement provision, nor did it provide that the Government would move for a sentence reduction pursuant to Section 5K1.1 or any other basis (*see id.* at 18–19). Had Miller accepted the plea

agreement, the Presentence Investigation Report ("PSR") that followed would have still concluded that Miller's criminal history subjected him to the enhanced sentencing provisions of the ACCA, 18 U.S.C. § 924(e), requiring a mandatory minimum fifteen year sentence. No provision of the proposed plea agreement would or could have given this Court the discretion to impose a shorter sentence.

The longer answer follows.

## BACKGROUND

In September 2007, Miller was charged in a single count indictment of being a felon in possession of a firearm under 18 U.S.C. § 922(g)(1). Miller entered a plea of not guilty and, after a bench trial, this Court found Miller to be guilty (*id.* at 2). In preparation for sentencing, the Probation Office prepared an initial PSR, which noted that Miller "is potentially subject to the enhanced sentencing provisions of [the ACCA], which requires a mandatory 15-year sentence" (Doc. 125, Ex. G at ¶ 5). A revised and final PSR explained that Miller's criminal record contained three previous violent felonies: involuntary manslaughter with a firearm specification, attempted felonious assault, and a juvenile conviction for felonious assault (Doc. 125, Ex. A at ¶¶ 37–38, 40). The PSR concluded that Miller qualified for a mandatory minimum sentence of fifteen years (*id.* at ¶ 85).

After conducting two evidentiary hearings to determine whether Miller's juvenile conviction qualified as a predicate violent felony under the ACCA, this Court sentenced Miller to 180 months of imprisonment -- the minimum sentence under the ACCA (Doc. 118 at 3). On direct appeal, Miller challenged this Court's ruling that his juvenile conviction comported with due process standards and qualified as a predicate offense. The Sixth Circuit affirmed (*id.*).

In April 2011, Miller filed a Petition pursuant to 28 U.S.C. § 2255 to vacate his sentence and a motion to amend the Petition, both of which this Court denied (*id.* at 3–4). On appeal, Miller

asserted that Rump was ineffective for failing to (1) argue that Miller's juvenile conviction does not qualify as a predicate violent felony under the ACCA, and (2) object to this Court's reliance on evidentiary hearings rather than *Shepard* documents to make that determination. Miller also challenged this Court's denial of his motion to amend, in which he asserted that he rejected a favorable plea agreement because Rump advised him that the ACCA's mandatory sentence enhancement would not apply if he proceeded to trial and was found guilty (*id.*). The Sixth Circuit upheld in part this Court's denial of Miller's ineffective assistance claims, but remanded the issue of whether Miller received ineffective assistance of counsel during plea negotiations (*id.* at 21).

## DISCUSSION

To succeed on his ineffective assistance claim, Miller must show "(1) counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for the deficiency, the outcome of the proceedings would have been different." *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003) (citing *Strickland v. Washington*, 466 U.S. 668, 694 (1984)); *see also Short v. United States*, 471 F.3d 686, 691–92 (6th Cir. 2006). Under the first prong, Miller bears the burden to "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Miller must show that counsel's representation was "below an objective standard of reasonableness." *Id.* at 688. Judicial scrutiny of Rump's performance must be "highly deferential." *Id.* at 689. Under the second prong, Miller must show "a reasonable probability that, but for counsel's unprofessional errors," the government would have entered into the proposed plea agreement, the agreement would have been accepted by this Court, and this Court would have imposed a more favorable sentence pursuant to the agreement than the sentence imposed following trial. *Missouri v. Frye*, 132 S. Ct. 1376, 1410 (2012);

3

*see Lint v. Prelesnik*, 542 F. App'x 472, 482 (6th Cir. 2013) (discussing *Strickland* prejudice in the context of plea negotiations under *Frye*).

Miller alleges that Rump was deficient in failing to (1) investigate and uncover the details of his criminal history, and (2) adequately advise him concerning his sentencing exposure (Doc. 130 at 3–4). Prior to the plea deal offer, the Assistant United States Attorney and Rump discussed whether Miller's prior convictions qualified as predicate acts under the ACCA. Neither side believed it applied (Doc. 128 at 50) and the ACCA was not referenced in the proposed plea agreement. Rather, the plea agreement provided that Miller would plead guilty to the single count of felon in possession and the parties agreed to recommend a guideline sentence -- calculated using a base offense level of 24, pursuant to Section 2K2.1(a)(2), and up to a three (3) point reduction in the offense level, pursuant to Section 3E1.1 (Doc. 125, Joint Stipulation 2 at ¶ 6). With the information Rump had prior to the trial regarding Miller's criminal history, Rump correctly advised Miller that he faced an estimated Guidelines range of 64 to 78 months of imprisonment, or 46 to 57 months of imprisonment if he received full credit for acceptance of responsibility (Doc. 125, Ex. B).

Even Miller's initial PSR suggested that the ACCA may not apply, but the final PSR concluded otherwise. The issue was murky enough that this Court held two hearings and heard testimony from the individuals involved in Miller's juvenile conviction to determine whether that conviction would constitute a third predicate felony. It was not until those hearings were completed that this Court concluded, properly, that Miller's sentence was not driven by the Guidelines but rather by the ACCA statutory mandatory minimum.

Miller thus cannot establish that Rump's performance fell below an objective standard of reasonableness under prevailing professional norms. Rump testified that upon learning the extent of

4

Miller's criminal history, Rump immediately began researching Miller's prior convictions and consulted Miller's juvenile counsel, family, the juvenile court, and pretrial services (Doc. 128 at 46, 55–56). Even when the basic facts of Miller's juvenile conviction were uncovered, it was unclear whether the conviction constituted a qualifying predicate for the ACCA enhancement. In discussions with Rump, both Miller and his family characterized the juvenile conviction for felonious assault as the result of a neighborhood altercation, failing to disclose that Miller had a gun and had shot someone (*id.* at 62–63). Miller admitted he did not begin to discuss his juvenile conviction with Rump until June or July, months **after** the plea agreement was offered and rejected (*id.* at 19–21). Rump did not fail to "attempt to learn the facts of the case [or] to make a good-faith estimate of a likely sentence." *Short*, 471 F.3d at 692 (internal quotation marks omitted).

Miller next argues Rump was ineffective for communicating a plea offer and recommending Miller reject it, based upon Rump's erroneous analysis of the chance for victory at trial. *See Lafler v. Cooper*, 132 S. Ct. 1376, 1385–91 (2012). However, Rump never encouraged Miller to reject the plea agreement and proceed to trial. To the contrary, Rump urged Miller to consider accepting the plea agreement because Miller wanted to get home to his children and a conviction after trial would mean a longer sentence (Doc. 128 at 68). Although Miller claims he did not see the actual written plea agreement until April 2015 in preparation for the evidentiary hearing (*id.* at 13–16), Miller acknowledges receipt of a March 2008 letter from Rump which detailed the basic terms of the agreement and the estimated sentencing Guidelines range (Doc. 125, Ex. B; Doc. 128 at 13). Miller confirmed in his testimony that Rump "never informed me whether I should plead guilty or proceed to trial based on the facts that [counsel] had gave me . . . . [Counsel] never said, well, you should plead guilty because of this or not plead guilty and go to trial because of that" (Doc. 128 at 24).

Rather, Rump explained that in the months leading up to trial, Miller "was so insistent in his innocence" and "steadfast that . . . this was a wrongful arrest and wrongful charge" that "irrespective of whether the potential sentence in the case was eight years or ten years or fifteen years," Rump believes Miller would have rejected a plea agreement and gone to trial (*id.* at 83, 88–89). Miller has not demonstrated *Lafler* error because he has not shown that Rump encouraged him to reject the plea agreement and proceed to trial.

Finally, Miller claims he was prejudiced because had he known he was facing a fifteen year mandatory minimum sentence, he would have accepted the plea agreement and avoided trial (*id.* at 33–36). As a practical matter, the fact that neither side knew the ACCA would apply at the time the Government offered the plea agreement is immaterial because Miller cannot show that, absent Rump's alleged error, his sentence would have been different. That is because the ACCA is mandatory and a minimum fifteen year sentence must be imposed pursuant to 18 U.S.C. § 924(e) if a defendant violates Section 922(g) and has three prior violent felony convictions. Miller's criminal history dictated his sentence, not his potential plea deal.

## CONCLUSION

Miller fails to appreciate that even if he would have accepted the proposed plea agreement, this Court would not have been bound by that agreement (*see* Doc. 125 at Joint Stipulation 2) ("Sentencing Recommendations Not Binding on the Court"). Once it was determined that Miller qualified for the ACCA, Miller's sentence became fixed by a statutory mandatory minimum, not the advisory Guidelines. For all the foregoing reasons, Miller's Petition is denied.

IT IS SO ORDERED.

    s/ *Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE

September 3, 2015